UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | DOCKET NO. 1:17 CR 28 |
| v. | ) | |
| | ) | **FACTUAL BASIS** |
| **TONY LEE STANFIELD** | ) | |
| | ) | |

   NOW COMES the United States of America, by and through Jill Westmoreland Rose, United States Attorney for the Western District of North Carolina, and hereby files this Factual Basis in support of the plea agreement filed simultaneously in this matter.

   This Factual Basis does not attempt to set forth all of the facts known to the United States at this time. This Factual Basis is not a statement of the defendant, and, at this time, the defendant may not have provided information to the United States about the offenses to which the defendant is pleading guilty, or the defendant's relevant conduct, if any.

   By their signatures below, the parties expressly agree that there is a factual basis for the guilty plea(s) that the defendant will tender pursuant to the plea agreement. The parties also agree that this Factual Basis may, but need not, be used by the United States Probation Office and the Court in determining the applicable advisory guideline range under the *United States Sentencing Guidelines* or the appropriate sentence under 18 U.S.C. § 3553(a). The defendant agrees not to object to any fact set forth below being used by the Court or the United States Probation Office to determine the applicable advisory guideline range or the appropriate sentence under 18 U.S.C. § 3553(a) unless the defendant's right to object to such particular fact is explicitly reserved below. The parties' agreement does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have agreed not to object and which are relevant to the Court's guideline computations, to 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

Cooperating defendant developed

On January 16, 2017, members of the Rutherford County Detention Team stopped a vehicle they had been watching. The driver, an individual they had dealt with previously on narcotics cases, had unlawfully dark-tinted windows and according to a check did not have a driver's license. They also called a K-9 who alerted on the vehicle. A search of the vehicle uncovered approximately a half-pound of methamphetamine.

The suspect immediately stated that he wanted to help himself and became a cooperating defendant (CD). CD stated that he could order a pound of meth from a source in Georgia and that he had done that several times. He provided a phone number for a person named "Darryl" and stated that

the individual would usually bring the meth to CD either the same day or the day after he ordered it and would usually call when leaving Georgia and again when he was about two hours away.

### Georgia order made, STANFIELD delivers

A couple days later agents identified "Darryl" as defendant BROOKS. CD texted BROOKS and told him that he would need to collect more cash but would be making another order soon. BROOKS replied, "Let me know." On January 19, 2017, CD made a recorded phone call to BROOKS and they agreed to make the same transaction as last time, which CD told officers meant one pound of methamphetamine.

On January 20, CD made a recorded phone call to BROOKS stating that CD was ready. BROOKS later responded that he would be sending "Tony" with the stuff. Agents decided to call off the deal. They tried again a few days later, with CD and BROOKS again communicating. On the evening of January 24 the CD texted BROOKS that he was ready, and BROOKS called the CD in an unrecorded conversation saying that he would be at the CD at 9AM the next day and that he would contact CD when he was two hours away.

At approximately 7:09AM on January 25, 2017, the CD received a phone call. The caller identified himself as "Tony" and stated that he was near Exit 61 close to the QT gas station. CD explained to agents that he/she had previously met "Tony" at a QT off I-85 near Chesnee, South Carolina. "Tony" stated that BROOKS was not with him and that he was instead travelling with his girlfriend. CD gave him an address in Rutherford County as the meet location.

Approximately 38 minutes later, "Tony" called again and said he was at an Ingles stretching his legs. ATF S/A Joseph Franze and TFO Chadd Murray were close to an Ingles in Chesnee along a route believed to be previously used by the suspect and shortly thereafter observed a silver Hyundai with Georgia license plates traveling north on US 221 toward Rutherford County. The vehicle had A1 Tire and Auto, 2743 Rockmart Rd, Villa Rica, GA and a phone number for that location on the front passenger door. That address had previously been determined to be affiliated with BROOKS.

S/A Franze and TFO Murray surveilled the car until Rutherford County Sheriff's Office (RCSO) marked cars did a probable cause stop at US Hwy 221 South near Woodleaf Drive in Rutherford County. The driver was identified as Tony Lee STANFIELD. His female passenger, Tammy Denise Kinsey, was the registered owner of the vehicle and consented to a search of it, but RCSO employed a K-9 who alerted on the vehicle as well. Officers found approximately 483 grams of suspected crystal methamphetamine underneath the front passenger seat. Two additional grams were found elsewhere in the vehicle. The suspected meth was field-tested and was revealed as meth. Eventually, the DEA's Southeast Laboratory in Miami would determine the substance to be methamphetamine hydrochloride with a net weight of 464.6 grams and a purity of 96% for a total weight of actual methamphetamine of 446 grams.

Agents were processing the evidence when STANFIELD's cell phone received a call. STANFIELD's phone had this number saved as "Darryl 2" in his contacts. Further, that was the same number that BROOKS had called the CD from two days prior. Other evidence included

2

scales, smoking paraphernalia, and a few knives, including a spring-assisted switchblade knife that was on the center console.

STANFIELD and Kinsey agreed to talk. STANFIELD stated that he had received the meth from BROOKS the night before, that he was going to be paid $500 for transporting it to someone named "DOC" in Rutherford County, that he wasn't sure of the weight but had weighed it the night before and knew it was in excess of 400 grams, and that he had called "DOC" from his phone while he was on his way and "DOC" had told him where to meet. STANFIELD stated he and BROOKS worked together at A1 Tire: BROOKS got the loans and paid the bills while STANFIELD handled the day-to-day operations. Kinsey works there as well and while the vehicle is in her name, STANFIELD said it was a shop vehicle. STANFIELD also stated that BROOKS had given him one of the bags of meth at work and then brought two more over to his camper.

Kinsey stated that she was a user of meth and that STANFIELD supplied her. She knew about the smaller quantities but did not know about the large amount until the police were behind her and STANFIELD told her that it was under her seat. She was going to toss the meth but STANFIELD told her not to do so.

JILL WESTMORELAND ROSE

UNITED STATES ATTORNEY

_____
JOHN D. PRITCHARD
ASSISTANT UNITED STATES ATTORNEY


### Defendant's Counsel's Signature and Acknowledgment

I have read this Factual Basis, the Superseding Bill of Indictment, and the plea agreement in this case, and have discussed them with the defendant. Based on those discussions, I am satisfied that the defendant understands the Factual Basis, the Superseding Bill of Indictment, and the plea agreement. I hereby certify that the defendant does not dispute this Factual Basis with the exception of those facts to which I have specifically reserved the right to object, and understands that it may be used for the purposes stated above.

_____     DATED: 6/2/17
Renae Alt-Summers, Attorney for Defendant

3